REQUESTED BY: Senator Chris Abboud Nebraska State Legislature State Capitol Lincoln, NE 68509
Dear Senator Abboud:
We have received your letter of December 27, 1984, in which you request us to reconsider our earlier Opinion Number 242, issued on December 19, 1984. In that opinion, we concluded, in part, that the Nebraska Investment Finance Authority was not statutorily permitted to substitute bonds authorized by the Authority for existing industrial development bonds issued by counties or municipalities.
In requesting us to review our opinion in this regard, you have provided us with a specific factual setting in which you ask whether the Authority may accomplish a refinancing of this nature. The question posed in your letter focuses on the potential refinancing, through the issuance of Authority bonds, of several grain elevators located in various areas of the state. The funds for constructing these grain elevators were originally obtained from financing provided by the issuance of industrial development bonds by counties and municipalities.
In our earlier opinion, we focused on the power granted to the Nebraska Investment Finance Authority under Neb.Rev.Stat. § 58-239(18) (Reissue 1984), which provides the Authority with the power `To issue bonds for the purposes of paying the cost of financing any project of projects,' and the definitions of `project' contained in 58-219. Based on the language in subsection (18) of 58-239, providing the Authority with the power to issue bonds to finance projects as defined in § 58-219, we concluded the Authority had no power to issue bonds to refinance existing industrial development bonds issued by counties or municipalities under Neb.Rev.Stat. §§ 18-1614 to18-1623 (Reissue 1983), as such refinancing would not involve the construction or acquisition by an entity of real or personal property constituting a `project.'
Upon reconsideration, we have analyzed various arguments which have been advanced to support the conclusion that the Authority has the power to issue bonds to effect a refinancing under these circumstances. While we recognize such arguments represent a reasonable interpretation of the powers granted to the Authority, we cannot affirmatively conclude the Authority is statutorily empowered to issue bonds to refinance or refund existing industrial development bonds issued by counties or municipalities.
The general powers granted the Nebraska Investment Finance Authority are enumerated in Neb.Rev.Stat. § 58-239
(Reissue 1984). Subsection (9) of § 58-239 provides the Authority has the power `To borrow money and issue bonds as provided by the Nebraska Investment Finance Authority Act.' Section 58-253, which grants the Authority the power to make issuance to renew or refund bonds, provides, in pertinent part:
 The authority shall have the power to issue from time to time bonds to renew or to pay bonds, including the interest on such bonds, and whenever it deems refunding expedient, to refund any bonds by the issuance of new bonds, whether the bonds to be refunded have or have not matured, and to issue bonds partly to refund outstanding bonds and partly for any other of its corporate purposes.
The definition of `bonds' is contained in § 58-210, which provides `Bonds shall mean any bonds, notes, debentures, interim certificates, bond anticipation notes, or other evidences of financial indebtedness.'
The Legislature, by virtue of § 58-253, clearly provided the Nebraska Investment Finance Authority with the power to issue bonds for refunding or refinancing purposes. Furthermore, the definition of bonds in § 58-210 is not specifically limited to bonds issued by the Nebraska Investment Finance Authority.
Arguably, based on the above statutory provisions, the Authority could have the power to issue bonds to refinance existing industrial development bonds originally issued by counties or municipalities, which provided funds for the construction of certain grain elevators in the state, provided the Authority determined such an issuance would effectuate a proper public purpose under the Act. Specifically, with respect to the proposed issuance of development bonds under the industrial or commercial arm of the Act, this would require the Authority to make the specific findings relating to the public purposes to be served by such issuance outlined in § 58-251, which provides:
 Prior to providing financing for a development project as defined by subdivision (3) of section 58-219, the authority shall make specific findings relating to the public purposes to be effectuated thereby, including but not limited to (1) with respect to a project as defined in subdivision (3)(a), (3)(b), or (3)(c) of section 58-219, the project's effect on the economic base, the tax base, tax revenue, and employment opportunities, . . . .
A further argument in support of the position that the Authority may properly engage in such refinancings is based on § 58-239(22), which grants the Authority the power
 To enter into financing agreements with others with respect to one or more projects to provide financing for such projects upon such terms and conditions as the authority may deem advisable to effectuate the public purposes of the Nebraska Investment Finance Authority Act, which projects shall be located within the state.
While the term `financing' is not specifically defined in the Act, the phrase `financing agreement' is defined is 58-211, in part, as follows:
 Financing agreement shall mean any contractual obligation between the authority and another entity with respect to the financing, which shall include without limitation refinancing, of a project or projects, and shall include, without limitation, a lease agreement, loan agreement, sale contract, take or pay contract, or user agreement. . . . The financing agreement shall also contain provisions with respect to the acquisition, construction, rehabilitation, improvement, or refinancing of a project to effectuate the public purposes of the Nebraska Investment Finance Authority Act. . . . (Emphasis added).
The use of the word financing in the first sentence of § 58-211, together with the following phrase which provides the word `shall include without limitation refinancing,' recognizes the power of the Authority to engage in refinancings. The last sentence of § 58-211 further provides the financing agreement shall contain provisions which include, among other things, the `refinancing of a project to effectuate the public purposes of the Nebraska Investment Finance Authority Act.'
Under these statutory provisions, the Authority arguably has the power to issue bonds and enter into a financing agreement with respect to the refinancing of industrial development bonds which were originally issued to finance a facility, such as the grain elevators discussed in your question, which would have qualified as a `project' under the Nebraska Investment Finance Authority Act, provided the Authority determined a proper public purpose would be served by the refinancing in question.
While we recognize the above interpretations do not represent an unreasonable construction of the statutory provisions outlining the powers of the Authority, we note that the refinancing or refunding of industrial development bonds issued by counties or municipalities is specifically provided for under Neb.Rev.Stat. § 18-1619 (Reissue 1983), which provides, in part:
 Any bonds issued under the provisions of sections 18-1614 to 18-1623 and at any time outstanding may at any time and from time to time be refunded by a municipality or county by the issuance of its refunding bonds in such amount as the governing body may deem necessary but not exceeding an amount sufficient to refund the principal of the bonds to be so refunded, together with any unpaid interest thereon and any premiums and commission necessary to be paid in connection therewith.
Under § 18-1619, the Legislature has provided a clear means by which an entity can seek a refinancing or refunding of industrial development bonds issued by a county or municipality. In contract, the statutory powers granted the Nebraska Investment Finance Authority do not clearly and unambiguously provide the Authority with the power to issue bonds to refinance industrial development bonds issued under §§ 18-1614 to 18-1623.
It is axiomatic that the Authority, being a creature of statute, is authorized to exercise only such powers as provided by the Legislature. Based on the absence of any clear statutory authority granting the Authority the power to issue bonds to refinance or refund industrial development bonds issued by counties or municipalities, coupled with the specific and clear authority to accomplish this result under § 18-1619, we cannot conclude the Authority has the power to effect a refinancing of this nature. Although we feel the argument advanced to support the position that the Authority has such powers are not unreasonable, we do not believe that the Authority may issue bonds to refinance industrial development bonds initially issued by counties or municipalities to finance the construction of grain elevator facilities in the state. To the extent that you feel the Authority should be vested with such power, we would recommend that you propose legislation which would clearly grant the Authority the power to engage in refinancings of this nature.
Very truly yours,
PATRICK T. O'BRIEN Deputy Attorney General
L. Jay Bartel Assistant Attorney General